**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**TRACEY CRAFT** **PLAINTIFF**

**V.** **CASE NO. 3:25-CV-00244 DPM-JTK**

**SOCIAL SECURITY ADMINISTRATION** **DEFENDANT**

# RECOMMENDED DISPOSITION

## I. Procedures for filing Objections:

This Recommended Disposition ("Recommendation") has been sent to United States District Judge D. P. Marshall, Jr. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## II. Introduction:

Plaintiff, Tracey Craft ("Craft"), filed an application for supplemental security income benefits on July 15, 2022. (Tr. at 34). In the application, she alleged that her disability began on June 13, 2022. *Id*. The application was denied initially and upon

reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ") found that Craft was not disabled. (Tr. at 34-46). The Appeals Council denied Craft's request for review of the hearing decision. (Tr. at 1-6). The ALJ's decision now stands as the final decision of the Commissioner, and Craft has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## III. <u>The Commissioner's Decision</u>:

The ALJ determined that Craft has not engaged in substantial gainful activity since July 15, 2022, the application date.[1] (Tr. at 36-37). The ALJ found, at Step Two, that Craft has the following severe impairments: degenerative disc disease of the cervical spine and lumbar spine with radiculopathy, rheumatoid arthritis, osteoarthritis of bilateral hands, polyneuropathy, neuralgia, chronic pain syndrome, major depressive disorder, and anxiety disorder. (Tr. at 37).

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

Craft worked during the relevant time-period at a gas station as a fast-food cook. *Id*. Craft testified that she worked 24 hours per week until about 3 months before the hearing. *Id*.

The ALJ determined that Craft did not have an impairment or combination of impairments that met or medically equaled a Listed Impairment.[2] *Id*. Next, the ALJ found that Craft had the residual functional capacity ("RFC") to perform work at the light exertional level, as defined in 20 C.F.R. § 416.967(b), with the following additional limitations: (1) can occasionally climb ramps or stairs; (2) can never climb ladders, ropes, or scaffolds; (3) can occasionally balance, stoop, kneel, crouch, and crawl; (4) can perform occasional overhead reaching with the upper extremities bilaterally; (6) can perform frequent gross handling and fingering with the upper extremities bilaterally; (7) can understand, remember and carry out simple instructions, but no work performed in a production rate environment (such as assembly line work); (8) can perform work involving only simple work-related decisions, and having to deal with only occasional changes in the work setting; and (9) is limited to occasional interaction with the general public. (Tr. at 40).

The ALJ determined that Craft has no past relevant work. (Tr. at 45). At Step Five, relying upon testimony from a vocational expert ("VE"), the ALJ found that, considering Craft's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Craft could perform. (Tr. at 45-

[2] See 20 C.F.R. Part 404, Subpart P Appendix 1: "Adult Listing of Impairments."

46). Therefore, the ALJ concluded that Craft was not disabled. *Id*.

## IV. <u>**Discussion**</u>:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co.*

*v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole, which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Craft's Arguments on Appeal

Craft contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) the RFC was unsupported because the ALJ erred in how he evaluated medical opinions; and (2) the RFC did not account for Craft's alleged social interaction limitations or task complexity limitations.

Craft did have persistent back and neck pain, often exacerbated by acute strains from physical activity. (Tr. at 41-45). She tried a variety of therapies, like chiropractor care, physical therapy, injections, and pain management, but she said that these treatments did not work for her. (Tr. at 42-44, 625-683). X-rays and MRIs of her back and neck showed only mild conditions, with some moderate foraminal

narrowing and disc disease.[3] (Tr. at 386-389, 495). Electrodiagnostic testing of her lower extremities yielded normal results. (Tr. at 528). Occasionally, Craft had painful range of motion ("ROM") in her neck and back, but more often, her ROM was normal. (Tr. at 44, 397-401, 620). At various clinic appointments, Craft denied muscle pain, aches, or weakness. (Tr. at 657-680). Craft's providers recommended conservative treatment after acute injury, such as heating pads and gentle stretching, with routine follow-up visits; additionally, Craft did not have surgery for any of her ailments. (Tr. at 664-674). Most telling is that Craft worked a physically strenuous job up until a few months before the hearing, interrupted only by mild acute strains.[4] (Tr. at 37, 671-675). While she said her impairments deteriorated over the relevant time-period, she could do daily activities like managing her personal care, preparing simple meals, doing light chores, shopping in stores, socializing, and going to church.[5] (Tr. at 38-39, 243-247, 272-280).

Craft had arthritis in her hands, and she said she could not easily grasp or

---

[3] Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

[4] Working generally demonstrates an ability to perform a substantial gainful activity, and it is inconsistent with complaints of disabling conditions. *Naber v. Shalala*, 22 F.3d 186, 188-89 (8th Cir. 1994).

[5] Such daily activities undermine her claims of disability. *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015).

finger. (Tr. at 41). Clinical examinations did show swelling and edema on occasion, but Craft said that that medication and steroid injections improved her pain.[6] (Tr. at 624-625, 653). Her treatment for arthritis was conservative.

Finally, Craft alleged that anxiety and depression interfered with almost all activities of daily living. However, she did not engage in any specialized psychiatric treatment, and throughout the record, her anxiety and depression screenings were normal, with a few exceptions. (Tr. at 559, 634-680). She often denied mental health symptoms at clinic appointments. *Id*. She also said that medication helped any alleged symptoms. (Tr. at 624-625, 658). Moreover, Craft was never fired for not getting along with others and she said that she got along with authority figures. (Tr. at 248). As mentioned above, she could perform a variety of daily activities that require social interaction.

1. **Analysis of Medical Opinions**[7]

---

[6] Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

[7] The ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). However, "[t]he first two factors—supportability and consistency—are the most important." *Id*. (citing 20 C.F.R. § 404.1520c(a)). Pursuant to the regulations, "treating physicians are [no longer] entitled to special deference." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)).

Craft asserts that the ALJ erred in his analysis of state-agency experts' opinions and that the RFC was, therefore, unsupported.

Dr. Chen Wang, M.D., evaluated Craft's physical functional capacity at the initial level of review. He opined that Craft could perform light work, but: (1) could never climb ladders, ropes, or scaffolds; (2) could only occasionally climb ramps or stairs; (3) could only occasionally balance, stoop, kneel, crouch, or crawl; (4) could only occasionally reach overhead; and (5) could only occasionally finger. (Tr. at 82-83). The ALJ found this opinion partially persuasive, based on imaging and lab results and clinical examinations. (Tr. at 43-44). The ALJ addressed supportability and consistency. *Id.*

Craft argues that the ALJ erred because he did not incorporate all of Dr. Wang's limitations into the RFC. However, an ALJ can decline to incorporate any portions of an opinion that he deems inconsistent.[8] And the ALJ did rely on quite a bit of Dr. Wang's opinion in crafting the RFC. He still assigned light exertional work with numerous physical and postural restrictions. (Tr. at 40). The ALJ adequately explained why he limited Craft to the less restrictive "frequent" fingering with both hands, rather than "occasional" fingering proposed by Dr. Wang; the record also

[8] *See Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000); *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011); *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

supported the ALJ's finding. (Tr. at 44). The ALJ may have been less than precise in some of his analysis, but "an arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where the deficiency probably had no practical effect on the outcome of the case."[9] The ALJ gave good reasons throughout the opinion to support his analysis of Dr. Wang's findings. And the record as a whole, showing no more than moderate conditions, positive response to medications, and an ability to perform daily activities, supported the ALJ's physical RFC for Craft.

Dr. Julie Cohen, Ph.D, reviewed the records at the initial level and determined that Craft could perform work "where interpersonal contact is incidental to the work performed, e.g., assembly work; the complexity of tasks is learned and performed by rote, with few variables, little judgment; and the supervision required is simple, direct, and concrete." (Tr. at 81). The ALJ found this opinion partially persuasive, based on the medical record and Craft's mental status examinations; he addressed supportability and consistency. (Tr. at 44). The RFC that the ALJ assigned stated that Craft can understand, remember and carry out simple instructions, with no work performed in a production-rate environment (such as assembly line work); can perform work involving only simple work-related decisions and having to deal with

[9] *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987).

only occasional changes in the work setting; and is limited to occasional interaction with the general public. (Tr. at 40).

Craft again avers that the ALJ should have adopted more precisely Dr. Cohen's RFC opinion.[10] The record showed: (1) no formal psychiatric treatment; (2) Craft's routine denials of psychiatric symptoms; and (3) Craft's ability to perform jobs and activities requiring social interaction. The ALJ properly assigned an RFC with fewer mental restrictions than suggested by Dr. Cohen.

**2. Social Interaction and Task Complexity**

Craft takes issue with how the ALJ accounted for social interactions in the RFC. Dr. Cohen suggested interpersonal contact be incidental to the work performed; the ALJ instead limited Craft to occasional interaction with the general public.[11] (Tr. at 40, 81). While Craft asserts that "incidental" and "occasional" are wholly disparate in RFC terms, this district has found that argument to be a red herring, and it has affirmed the ALJ in cases just like this where the ALJ harmonized

---

[10] A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

[11] Craft overlooks the fact that Cohen checked a "No" box where the RFC form asked whether she had any social interaction limitations. (Tr. at 85).

and reconciled any discrepancy about the claimant's ability to interact with people.[12]

Craft also claims that she could not perform tasks at the level assigned in the RFC.[13] She says the ALJ should have adopted verbatim Dr. Cohen's opinion that Craft was only capable of rote work with few variables and little judgment. Again, the ALJ can discount certain parts of medical opinions that are not in line with the evidence, and this medical record supports the ALJ's decision to assign a different mental RFC than that assessed by Dr. Cohen.

Craft also claims that because some of the jobs identified at Step Five required a higher reasoning of level 2 or 3, the ALJ's decision must be reversed.[14] But the "office cleaner" job that the VE identified only requires level 1 reasoning, which is the ability to "apply commonsense understanding to carry out simple one- or two-

---

[12] *See Turner v. Soc. Sec. Admin.*, No. 4:23-CV-00684-JTK, 2024 WL 964176, at *3 (E.D. Ark. Mar. 6, 2024).

Each medical or RFC finding at each Step of the analysis can be different and still support the ALJ's decision as a whole. *See Chismarich v. Berryhill*, 888 F.3d 978, 980-981 (8th Cir. 2018) (as long as the ALJ's decision harmonizes the Steps, each Step does not need to mirror the preceding Steps).

[13] The RFC and the jobs identified by the VE cited "unskilled" work, the simplest form of work from a mental function standpoint. (Tr. at 45-46). See 20 C.F.R. § 416.968(a); 20 C.F.R. pt. 404, subpt. P., App. 2, § 201.00(i), 202.00(g).

[14] The *Dictionary of Occupational Titles* ("DOT") is relied on by VEs, and it identifies reasoning levels for certain jobs that measure the minimum problem-solving skills a worker needs to perform a job. https://occupationalinfo.org/appendxc.

step instructions, [and to] deal with standardized situations with occasional or no variables in or from situations encountered on the job." DOT 323.687-104. The VE identified 380,000 such jobs nationwide.[15] (Tr. at 46). The ALJ properly considered medical evidence, opinion evidence, and Craft's own statements about her ability to work during the relevant time-period when he created the RFC. Reversal is not warranted.

## V. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly evaluated medial opinions and the RFC incorporated all of Craft's credible limitations. The finding that Craft was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 14th day of October, 2026.

UNITED STATES MAGISTRATE JUDGE

[15] The Eighth Circuit has held that "as few as 10,000 national jobs [is] a sufficient number to constitute significant national work." *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997).